UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

JOHNETHAN G.,[1]

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

———————————————————

23-CV-647-LJV
DECISION & ORDER

On July 6, 2023, the plaintiff, Johnethan G. ("Johnethan"), brought this action

under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that he was not

disabled.[2]  *Id.*  On December 1, 2023, Johnethan moved for judgment on the pleadings,

Docket Item 9; on January 31, 2024, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 13; and on February 14, 2024, Johnethan

replied, Docket Item 14.

———————————————————

[1] To protect the privacy interests of Social Security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov.
18, 2020).

[2] Johnethan applied for both Children's Disability Insurance Benefits ("DIB") and
Supplemental Security Income ("SSI").  Children's DIB may be awarded to a claimant
who is 18 years old or older and has a disability that began before the claimant reached
age 22.  *See* 20 C.F.R. § 404.350(a)(5).  SSI, on the other hand, is paid to a person
with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified
individual may receive both DIB and SSI, and the Social Security Administration uses
the same five-step evaluation process to determine eligibility for both programs.  *See* 20
C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Johnethan's motion and grants the Commissioner's cross motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld.").  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.   THE ALJ'S DECISION

On June 13, 2022, the ALJ found that Johnethan had not been under a disability from May 17, 2017, through the date of the decision.  *See* Docket Item 5 at 35.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.* at 22–24.

At step one, the ALJ found that Johnethan had not engaged in substantial gainful activity since May 17, 2017, the amended alleged onset date.  *Id.* at 24.  At step two, the ALJ found that Johnethan suffered from three severe, medically determinable impairments: "diabetes, neuropathy[,] and learning disorder."  *Id.*

At step three, the ALJ found that Johnethan's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 25.  More specifically, the ALJ found that Johnethan's physical impairments did not meet or medically equal listing 9.00 (endocrine disorders) or 11.14 (peripheral neuropathy).  *Id.* at 25–26.  Likewise, the ALJ found that Johnethan's mental impairments did not meet or medically equal listing 12.11 (neurodevelopmental disorders).  *Id.*  In assessing Johnethan's mental impairments, the

3

ALJ found that Johnethan was: (1) moderately impaired in understanding, remembering, or applying information; (2) not impaired in interacting with others; (3) mildly impaired in concentrating, persisting, or maintaining pace; and (4) mildly impaired in adapting or managing himself. *Id.* at 26–27.

The ALJ then found that Johnethan had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C[.]F[.]R[. §§] 404.1567(b) and 416.967(b)" except that:

> [Johnethan] can stand and/or walk for a total of no more than 2 hours in an 8-hour workday.  He requires the option to change positions at 60[-]minute[] intervals allowing him to remain [in] the new position for up to 5 minutes before returning to the previous position.  [He] can occasionally climb stairs but can never climb ladders.  He can occasionally balance, stoop, crouch, kneel[,] and crawl.  He can occasionally operate foot controls.  [He] can have no exposure to extreme heat or cold, no exposure to vibration[,] and no exposure to workplace hazards, such as unprotected heights and dangerous moving machinery.  He is limited to performing simple, routine tasks.

*Id.* at 27–28.

At step four, the ALJ found that Johnethan had no past relevant work. *Id.* at 33. But given Johnethan's age, education, and RFC, the ALJ found at step five that Johnethan could perform substantial gainful activity as a document preparer, polisher of optical goods, or final assembler. *Id.* at 33–34; *see Dictionary of Occupational Titles* 249.587-018, 1991 WL 672349 (Jan. 1, 2016); *id.* at 713.684-038, 1991 WL 679267 (Jan. 1, 2016); *id.* at 713.687-018, 1991 WL 679271 (Jan. 1, 2016).  The ALJ therefore

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

found that Johnethan had not been under a disability from his amended alleged onset date through the date of the decision.  *See* Docket Item 5 at 35; *see also id.* at 24.

## II.    ALLEGATIONS

Generously reading Johnethan's motion, the Court finds that he raises two arguments.  *See* Docket Item 9-1 at 7–10.  First, Johnethan explicitly argues that the ALJ failed to properly consider the effects of Johnethan's learning disability in determining his RFC.  *Id.* at 7–9.  Second, Johnethan suggests that the ALJ failed to consider Johnethan's worsening psychiatric condition in applying the special technique. *Id.* at 9–10.  For the reasons that follow, this Court disagrees.

## III.    ANALYSIS

### A.  The RFC Determination

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  So long as an "ALJ's analysis . . . affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence," there is no error.  *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

In this regard, the Social Security Administration has provided specific guidance for evaluating disability in young adults—that is, those "between the ages of 18 [and] approximately 25."  SSR 11-2p, 2011 WL 4055665, at *2 (Sept. 12, 2011).  Although the same definitions, rules, and five-step evaluation process apply to both young adults and older adults, *see id.*, SSR 11-2p also recognizes that "evidence about a young adult's functioning from school . . . may indicate how well a young adult can use his or her

5

physical or mental abilities to perform work activities," *id.* at *7.  In other words, SSR 11-2p suggests "a wide variety of other sources that the ALJ may find helpful in evaluating a young adult's functional capacity," but it does not require the ALJ to evaluate "each source in every case."  *Natalie L. v. Comm'r of Soc. Sec.*, 2025 WL 957580, at *5 (W.D.N.Y. Mar. 31, 2025).

Johnethan argues that in formulating the RFC, the ALJ "largely omitted any review of [his] education records, which showed evidence of specific functional effects of [his] learning disorder."  Docket Item 9-1 at 7.  This, Johnethan says, left "the ALJ's finding that [he] could perform 'simple, routine tasks'" unsupported by substantial evidence.  *Id.*  But the ALJ was not required to explicitly consider Johnethan's educational records.  *See Frankie M. v. Comm'r of Soc. Sec.*, 2022 WL 282814, at *4 (W.D.N.Y. Jan. 31, 2022) ("The regulations do not mandate that the ALJ even consider educational records for a claimant of Frankie's age, much less adopt their conclusions."); *Eckert v. Comm'r of Soc. Sec.*, 2019 WL 6307353, at *6 (E.D.N.Y. Nov. 25, 2019) ("While an ALJ may consider educational records, [he or she is] not required to.").  And even if he was, the ALJ indeed considered Johnethan's educational records and the evidence of his learning disorder here.  *See* Docket Item 5 at 30.

For example, the ALJ noted that Johnethan had been "diagnosed with and had a history of a mental impairment that included learning disorder."  *Id.*  The ALJ also noted that Johnethan "had a longitudinal history of being in the borderline range of cognitive ability, had a history of academic skill delays[,] and [had] a history of learning disability."  *Id.*  And the ALJ cited Johnethan's educational records in support of those findings.  *See id.* (citing *id.* at 957, 1014, 1104, 1160).

Johnethan takes issue with the ALJ's failure to explicitly discuss "evidence of [Johnethan's] *specific* cognitive limitations."  Docket Item 9-1 at 9 (emphasis in original).  But "[a]n ALJ does not have to state on the record every reason justifying a decision," and the "failure to cite specific evidence does not indicate that such evidence was not considered."  *Valdes-Ocasio v. Kijakazi*, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of the ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").  Rather, so long as the ALJ's decision provides "an adequate basis for meaningful judicial review . . . and is supported by substantial evidence," there is no error.  *Cichocki*, 729 F.3d at 177.  And that is precisely the case here.

What is more, the opinion evidence supported the ALJ's RFC determination.  For example, Christine Ransom, Ph.D., opined that Johnethan had no limitations in any areas of mental functioning, and that Johnethan's impairments would "not interfere with [his] ability to function on a daily basis."  *Id.* at 584–85.  Likewise, A. Chapman, Psy.D., and O. Fassler, Ph.D., reviewed the record and found that Johnethan's mental impairments caused no more than mild limitations, would not interfere with Johnethan's ability to function on a daily basis, and were non-severe.  *Id.* at 159, 195.  The ALJ explicitly addressed those opinions in determining Johnethan's RFC.  *See* Docket Item 5 at 32.

Because those three doctors agreed that Johnethan had no significant mental impairments, the ALJ could have relied on their opinions to craft an RFC with no mental limitations. Instead, the ALJ gave Johnethan the benefit of the doubt, credited his history of learning disability, and restricted him to "simple, routine tasks." *Id.* at 28, 32–33. That was to Johnethan's benefit and certainly was not error. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (finding an ALJ's deviation "from consultative examiners' recommendations to *decrease* [a claimant's] RFC based on other evidence in the record" was not error. (emphasis in original)).

In sum, the ALJ adequately considered the effects of Johnethan's learning disability and crafted an RFC that was consistent with, or more restrictive than, the evidence and opinions in the record. Johnethan may disagree with how the ALJ weighed each piece of evidence, but it is not the function of this Court to re-weigh that evidence or to determine *de novo* whether Johnethan is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence. This Court will not second-guess it. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

## B. The Step-Three Determination

At steps two and three, the regulations require the ALJ to apply the "special technique" in deciding whether the claimant's medically determinable mental impairments are severe. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). To do so, the ALJ must determine the claimant's degree of impairment in four broad functional

areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 416.920a(c)(3).  The ALJ's decision must "reflect application of the [special] technique" and "include a specific finding as to the degree of limitation in each of the functional areas."  *Ornelas-Sanchez v. Colvin*, 632 F. App'x 48, 49 (2d Cir. 2016) (citation modified).

Here, the ALJ did what the regulations required.  He found that Johnethan had no limitation in interacting with others; only mild limitations in concentrating, persisting, or maintaining pace and adapting or managing himself; and a moderate limitation in understanding, remembering, or applying information.  *See* Docket Item 5 at 26–27.  And the ALJ concluded that "[b]ecause [Johnethan's] mental impairment d[id] not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria [we]re not satisfied."  *Id.* at 27.

Johnethan says that in making that determination, "the ALJ paid short shrift to the worsening of [Johnethan's] psychiatric condition."  Docket Item 9-1 at 9.  And Johnethan points to various notes in the medical record that he says support greater limitations than the ALJ found.  *See id.* at 10.  But "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect[,] so long as they are supported by substantial evidence."  *Genier*, 606 F.3d at 49.  In other words, Johnethan must show that "no reasonable factfinder could have reached the ALJ's conclusion."  *Thomas S. v. Comm'r of Soc. Sec.*, 2021 WL 1293105, at *7 (W.D.N.Y. Apr. 7, 2021) (citing *Brault v. Soc.*

9

*Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)).  And Johnethan's arguments fall short of that high bar.

To begin, the opinion evidence supported the ALJ's step-three findings in the four domains.  For example, and as noted above, Dr. Ransom found that Johnethan had no limitations in any area of mental functioning and that Johnethan's psychiatric symptoms would "not interfere with [his] ability to function on a daily basis."  Docket Item 5 at 584. Drs. Chapman and Fassler similarly found that Johnethan had no limitation in interacting with others and only mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing himself.  *See id.* at 158, 194.  And as also noted above, the RFC was even more restrictive than those opinions suggested.  *See id.* at 27–28.

Moreover, in determining that Johnethan was moderately limited in the domain of understanding, remembering, or applying information, the ALJ explicitly cited the psychiatric assessment and treatment notes of Qasim Jaffri, D.O.  *See* Docket Item 5 at 26 (citing *id.* at 874–85).  Dr. Jaffri began treating Johnethan in December 2021, *see id.* at 875, *after* Johnethan alleges that his psychiatric condition worsened, *see* Docket Item 9-1 at 9.  So contrary to Johnethan's argument, *see id.*, the ALJ considered evidence of Johnethan's worsening psychiatric condition, *see* Docket Item 5 at 26.  And, in any event, the ALJ found Johnethan to be more limited in the four domains than at least some providers found.  *See* Docket Item 5 at 26.

In sum, the ALJ appropriately considered the complete record, including the opinion evidence, in applying the special technique.  The ALJ therefore did not err at step three.  *Cf. DeChirico v. Callahan*, 134 F.3d 1177, 1182–83 (2d Cir. 1998) (where

"substantial evidence in the record" supported the claimant's account, "[b]ut there was also substantial evidence in the record from which the ALJ could have reasonably" ruled against the claimant, "we cannot say that the ALJ's finding . . . was unsupported by the record.").

All this is not to say that Johnethan will not be entitled to benefits in the future. Indeed, if his condition continues to worsen on what he says is its current trajectory, *see* Docket Item 9-1 at 9–10, he can and should reapply for benefits, *see Rice v. Comm'r of Soc. Sec.*, 114 F. Supp. 3d 98, 109–10 (W.D.N.Y. 2015) ("If [the p]laintiff's condition has worsened to the point where [the p]laintiff believes she is presently disabled, then she may file a new application for benefits."). But based on the current record before this Court, substantial evidence supports the ALJ's decision that Johnethan was not disabled during the period at issue here. And for that reason, Johnethan is not entitled to benefits now. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

11

**CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Johnethan's motion for judgment on the pleadings, Docket Item 9, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 13, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


        SO ORDERED.

Dated:        May 19, 2026
              Buffalo, New York


                                */s/ Lawrence J. Vilardo*
                                LAWRENCE J. VILARDO
                                UNITED STATES DISTRICT JUDGE